IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-03460-PAB-KMT

SHAROLYN LEEPER,

      Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY and
ALLSTATE INSURANCE COMPANY,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on the Motion for Partial Summary Judgment

[Docket No. 54] filed by defendants Allstate Fire and Casualty Insurance Company and

Allstate Insurance Company (collectively, "Allstate").  The Court has jurisdiction

pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

      On June 26, 2009, Adam Ramos, a non-party, negligently rear-ended the vehicle

in which plaintiff was riding (the "June 2009 accident," or the "accident").  Docket No. 54

at 2, Statement of Undisputed Material Fact ("SUMF") 1-3.[2]  Plaintiff pursued a personal

---

[1]The following facts are undisputed unless otherwise indicated.

[2]In disputing many of the SUMFs, plaintiff cites to numerous pieces of evidence
in the record that are inadmissible, either because they are hearsay – most commonly,
citations to plaintiff's testimony summarizing her doctors' opinions – or rely on plaintiff's
lay testimony where expert opinion is required.  *See, e.g.*, Docket No. 77 at 2, response
to SUMF 7 (citing plaintiff's deposition testimony for the conclusion that the crash
worsened the severity of one of her medical conditions and plaintiff's characterization of

injury claim against Mr. Ramos' insurance carrier and settled for the policy limit of $50,000. *Id.*, SUMF 4. At the time of the accident, plaintiff was insured under an Allstate Fire and Casualty Insurance Company policy and an Allstate Insurance Company policy, both of which provided underinsured motorist coverage. *Id.* at 3, SUMF 5. Plaintiff filed a claim for underinsured motorist benefits under both Allstate policies, claiming that her settlement with Mr. Ramos did not fully compensate her for her injuries. *Id.,* SUMF 6. Plaintiff claims to have suffered numerous injuries as a result of the accident, including sacroiliac ("SI") joint dysfunction and an aggravation of complex regional pain syndrome ("CRPS") in her left leg, which eventually spread to other parts of her body. *Id.*, SUMF 7. Additionally, plaintiff claims damages for lost wages beginning June 26, 2009 through her projected date of retirement. *Id.*, SUMF 8.

Before the June 2009 accident, plaintiff experienced numerous health problems, including complications from an injury plaintiff suffered in January 2008 while she was employed as a Colorado State Trooper (the "January 2008 injury"). *Id.,* SUMF 9. At the time of the June 2009 accident, plaintiff was on her way to a doctor's appointment related to the January 2008 injury. *Id.* at 4, SUMF 10. After her January 2008 injury, plaintiff worked light or modified duty for a period of time, but she stopped working in December 2008. *Id.*, SUMF 12. After she stopped working for the Colorado State Patrol, plaintiff never returned to work and eventually resigned in July 2010. *Id.*, SUMF

---

her treating doctors' opinions concerning the CRPS diagnosis). In other instances, plaintiff's responses cite evidence and legal argument that do not dispute the substance of the relevant SUMF. *E.g.*, Docket No. 77 at 7-8, response to SUMFs 26, 28. The Court will not point out each instance where plaintiff's responses to Allstate's SUMFs do not adequately create a dispute. The Court has thoroughly reviewed the record and, based on such review, treats each such SUMF as undisputed.

13.  At the time of the June 2009 accident, plaintiff says she "planned a return to her job either as a State Trooper or in other duty," Docket No. 77 at 4, Response to SUMF 14, but there was no anticipated date for her return.  *Id*. SUMF 14.

Before the accident, some of plaintiff's treating physicians were beginning to think that she had CRPS in her left leg.  Docket No. 54 at 4-5, SUMF 16.  One of them, Dr. Russell Parker, testified that plaintiff had CRPS before the July 2009 accident.  *Id.* at 5, SUMF 17.  Dr. Parker testified that CRPS is "at best poorly understood," Docket No. 54-2 at 2, p. 10:1-2, that the condition changes over time, *id.* at 5, p. 31:1-3, and that it is unknown why CRPS spreads in some people and does not spread in others. *Id.* at 3, pp. 19:19-20:4.

Following plaintiff's January 2008 injury and before the June 2009 accident, plaintiff favored her left leg while walking and used a cane or crutches.  Docket No. 54 at 5, SUMF 22.  Plaintiff testified that, because she had to favor her left leg, she developed some soreness in her lower back before the June 2009 accident.  Docket No. 54-1 at 9, p. 174:2-10.

After the June 2009 accident, Dr. Jeffrey Donner diagnosed plaintiff with SI joint dysfunction which led to an SI joint fusion.  Docket No. 54 at 6, SUMF 26.  Dr. Donner opined that plaintiff's SI joint dysfunction, which required surgery, was caused by the June 2009 accident, in part because plaintiff told him that her pain in the affected area started after the accident.  Docket No. 54-3 at 2, pp. 38:24-39:5.  Additionally, in a letter dated March 10, 2013, Dr. Parker opined that the accident was 100% responsible for plaintiff's SI joint, neck, and left shoulder injuries as well as her upper thoracic pain. Docket No. 77-12 at 2.  He stated that the aggravation of plaintiff's CRPS was 50%

3

attributable to the accident.  *Id.*  Dr. Parker testified at a deposition that his attribution of

plaintiff's injuries to the accident was not "based on anything other than [plaintiff's]

opinion."  Docket No. 54-2 at 6, p. 60:21-22.

Gerald Palmer, an Allstate claims service consultant who initially handled

plaintiff's claim, states that he received plaintiff's medical and billing records in

piecemeal fashion.  Docket No. 54-5 at 1, ¶ 5.  In a letter dated March 14, 2012,

plaintiff's former counsel informed Mr. Palmer that plaintiff was not claiming any

benefits for plaintiff's left knee due to "medical conditions which pre-existed" the June

2009 accident, and that after some initial treatment, plaintiff's "left knee/leg returned to

the baseline which pre-existed" the accident.  Docket No. 54-5 at 8.[3]  On July 24, 2012,

---

[3]Plaintiff claims that these statements are inadmissible pursuant to Fed. R. Evid. 408 because the March 14, 2012 communication was a confidential demand letter. Docket No. 77 at 9.  Allstate responds that Rule 408 does not exclude admissions of fact made during the course of compromise offers.  Docket No. 85 at 16-17 (citing *Megarry Bros., Inc. v. U.S. for the Use of Midwestern Elec. Constr., Inc.*, 404 F.2d 479, 485 (8th Cir. 1968)).  Both parties are mistaken.  The case on which Allstate relies predates Rule 408.  While, under common law, the exclusion of offers of compromise "did not extend to 'admissions of fact,'" *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 529 (3d Cir. 1995), "Rule 408 specifically rejects this approach, and instead adopts a rule excluding factual admissions made in the course of settlement negotiations." *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 445  (6th Cir. 2010) (unpublished).  Nonetheless, the evidence is admissible.  Rule 408 only prohibits statements made in connection with settlement offers that are used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).  Allstate does not seek to introduce the evidence as proof that the accident did not injure plaintiff's left leg, but rather to argue that Allstate acted reasonably in investigating the degree to which plaintiff's injuries were attributable to the June 2009 accident.  Multiple courts have held that Rule 408 does not apply to evidence used to demonstrate or negate a claim that an insurance company acted in bad faith.  *See, e.g.*, *Council for the Nat'l Register of Health Serv. Providers in Psych. v. Am. Home Assur. Co.*, 632 F. Supp. 144, 146 n.1 (D.C. Cir. 1985) (Rule 408 does not bar "evidence . . . offered by plaintiff to support, and by defendant to negate, claims of bad faith on the part of the insurance carrier"); *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 450 (S.D.N.Y. 1985) ("Rule 408 may

4

Mr. Palmer states that he received a phone call from plaintiff's current attorney who stated that, contrary to the representation in the March 14, 2012 letter, plaintiff was now claiming that the treatments for her left leg and CRPS were caused in part by the June 2009 accident. *Id.* at 3-4, ¶ 15.  Additionally, Mr. Palmer states that, when reviewing plaintiff's medical records, he saw that plaintiff experienced low back pain that pre-dated the June 2009 accident. *Id.* at 2, ¶ 8.  According to Mr. Palmer, because of plaintiff's "complicated medical history, medical records which were conflicting in regard to which injuries were caused by the June 26, 2009 accident, and the fact that [he] was initially informed that the left leg injuries and CRPS were not accident related but was then told that they were," he retained a doctor to review the records and determine which injuries were accident related. *Id.* at 4, ¶ 18.  Mr. Palmer also states that there was evidence that suggested that the June 2009 accident was minor in nature, including that the repairs to the truck were limited to $696.71 and that Ms. Leeper reported to her treating physician that she did not feel "much problems" after the accident. *Id.* at 5, ¶ 20.

On January 22, 2013, Paula Humphrey, a claims analyst for Allstate, began

---

not exclude evidence that shows the bad faith failure of an insurance carrier to settle"); *Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1257 (D. Colo. 2003) ("Rule 408 does not impose an absolute ban on the admission of statements made during settlement negotiations.  For example, evidence of settlement offers may be admissible to challenge a claim of undue delay [or] to prove the defendant's knowledge and intent[.]") (citations omitted); *cf.* Fed. R. Evid. 408(b) (evidence of conduct or statements made during settlement negotiations is admissible when used in "negating a contention of undue delay").  This is true even where bad faith is brought as an independent claim.  *See Council for the Nat'l Register of Health Serv. Providers in Psych*, 632 F. Supp. at 146 & n.1 (evidence from settlement negotiations supporting or negating bad faith would be admissible at trial where plaintiffs brought a claim for "bad faith refusal to honor an insurance contract").

handling plaintiff's claim.  Docket No. 54 at 8, SUMF 36.  On February 14, 2013 and July 14, 2013, Ms. Humphrey received two reports from Dr. John Douthit, the physician who performed the medical records review requested by Mr. Palmer.  *Id.*, SMF 37.  Dr. Douthit's reports stated that, in his opinion, the accident resulted in temporary neck, back, and shoulder pain and a temporary exacerbation of plaintiff's pre-existing conditions.  *Id.*[4]  Based Allstate's evaluation of plaintiff's claim, Allstate took the position that plaintiff's $50,000 settlement with Mr. Ramos's liability insurance carrier adequately compensated her for the June 2009 accident.  Docket No. 54 at 8, SUMFs 38-39.

Plaintiff filed this lawsuit in the District Court for the City and County of Denver, Colorado on October 25, 2013.  Docket No. 1-3 at 6.  Allstate removed the case on December 23, 2013.  Docket No. 1.  In the operative complaint, plaintiff brings claims for breach of insurance contract, statutory insurance bad faith, and common law insurance bad faith.  *See* Docket No. 27.  Allstate argues that it acted reasonably as a matter of law in taking the position that plaintiff's settlement with Mr. Ramos adequately compensated her and, accordingly, seeks partial summary judgment on plaintiff's statutory and common law bad faith claims.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

---

[4]Plaintiff objects that Dr. Douthit's reports are inadmissible hearsay.  Docket No. 77 at 15, SUMF 37.  While the reports, introduced as attachments to Ms. Humphrey's affidavit, are inadmissible for the truth of the matter asserted, Allstate does not offer them for that reason.  For the purpose of this motion, Allstate offers Dr. Douthit's report as evidence that Allstate did not act unreasonably in determining that plaintiff was adequately compensated by her settlement with Mr. Ramos.  Dr. Douthit's reports are admissible for this limited purpose.

the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the

case." *Bausman*, 252 F.3d at 1115 (citation omitted).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

### A.  Reasonableness as a Matter of Law

Under Colo. Rev. Stat. § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."[5] Colo. Rev. Stat. § 10-3-1115(1)(a).  An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  Colo. Rev. Stat. § 10-3-1115(2).

Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists.  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  Under common law bad faith principles, Colorado courts traditionally find that it is reasonable for an insurer to challenge claims that are "fairly debatable."  *Id.* at 496.  Thus, under common law, finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably, but "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case."  *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217-18 (Colo. App. 2010) (citation omitted).

The "burden of proving th[e] statutory claim is less onerous than that required to

---

[5]The parties do not dispute that plaintiff is a first-party claimant within the meaning of the statute.

prove a claim under the common law for breach of the duty of good faith and fair dealing." *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011). "[T]he only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012). Thus, even if Allstate's denial was "fairly debatable," that alone would not establish that Allstate's actions were reasonable as a matter of law under the insurance bad faith statute.

Here, Allstate argues that, given plaintiff's significant pre-accident medical history, the fact that CRPS is not a static condition and changes over time, plaintiff's conflicting representations concerning the extent to which the accident caused her injuries, the evidence that plaintiff's low back pain predated the accident, and the fact that plaintiff was not working at the time of the accident, plaintiff's claim is fairly debatable. *See generally* Docket No. 54 at 12-17. In relying on whether plaintiff's claim was fairly debatable, Allstate misconstrues the legal standard for granting summary judgment based on plaintiff's bad faith claims. As discussed above, "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law" in Colorado, either for statutory or insurance bad faith. *Vaccaro*, 275 P.3d at 759-60 (citation and quotation omitted); *see also Sanderson*, 251 P.3d at 1218. Instead, reasonableness in this context cannot be found unless there are "no genuine issues of material fact" that would permit a jury to conclude that Allstate acted unreasonably. *Vaccaro*, 275 P.3d at 759-60.

Allstate has raised numerous factual issues that, at best, give rise to an

inference that plaintiff's injuries were the result of a pre-existing injury rather than the June 2009 accident. The Court cannot grant summary judgment on this record without weighing such evidence and drawing inferences in Allstate's favor. This, of course, is impermissible on summary judgment. *McBeth,* 598 F.3d at 715. For instance, although Allstate states that it relied on Dr. Douthit's opinion that the accident caused plaintiff only temporary injuries when reaching its position that plaintiff was fairly compensated by her settlement with Mr. Ramos, Docket No. 54 at 8, SUMF 37, the Court cannot conclude that no reasonable jury could find that Allstate acted unreasonably in preferring Dr. Douthit's opinion to Dr. Parker's contrary opinion without weighing those opinions and drawing conclusions as to their respective value.[6] Similarly, while Allstate states that plaintiff's medical records demonstrate that she suffered low back pain before the accident, contrary to what she told Dr. Donner, plaintiff's testimony is that her lower back pain before the accident was limited to "some soreness," Docket No. 54-1 at 9, p. 174:5-6, while after the crash she experienced "sharp, shooting pains." Docket No. 77-8 at 96, p. 355:13-14. Evaluating the credibility of plaintiff's testimony, compared with the relevant medical records, is the province of the jury.

Allstate attempts to characterize its disagreement with plaintiff as a mere dispute over the value of plaintiff's claim that cannot, in itself, support a bad faith claim. Docket No. 54 at 11 (citing *Sanderson*, 251 P.3d at 1220). The Court disagrees. The evidence on which Allstate relies to show that plaintiff's claim is fairly debatable, including

---

[6]Likewise, the Court cannot conclude that Allstate acted reasonably as a matter of law in discounting Dr. Parker's opinion on the ground that Dr. Parker relied on plaintiff's own report of her symptoms without first drawing the inference that plaintiff's self-reporting was not fully credible. The Court declines to do so.

evidence that plaintiff's pre-accident medical records contradict her statements to her doctors, evidence concerning whether the accident caused plaintiff's inability to work, and evidence concerning whether the spread of plaintiff's CRPS was attributable to the accident relates to causation, not to the value of plaintiff's claim.   Because Allstate disputes that the accident was the cause of many of plaintiff's claimed injuries, this case cannot be described as a mere dispute over valuation that cannot sustain a cause of action for bad faith.

In sum, the Court finds that Allstate is not entitled to summary judgment on either plaintiff's common law or statutory bad faith claims based on its fair debatability argument.

### B.  Expert Testimony

Allstate argues that plaintiff cannot prove her statutory and common law bad faith claims at trial because she has no expert to testify about insurance industry standards.  Docket No. 54 at 17-20.  Plaintiff responds that expert testimony is not required in this case because the relevant facts are within the common understanding of ordinary jurors.  Docket No. 77 at 29.[7]

In Colorado, for both statutory and common law bad faith claims, the reasonableness of an insurer's conduct must be determined objectively based on industry standards.  *See Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004).  An insurer's claims handling decisions "must be evaluated based on the information before the insurer at the time of that decision."  *State Farm Mut. Auto. Ins.*

---

[7]Plaintiff apparently concedes that she has not designated an expert who is qualified to testify as to industry standards in claims handling.

*Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011).  Although expert testimony concerning industry standards is often helpful, "[i]f the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people, then expert testimony is not required."  *Allen*, 102 P.3d at 344.

Plaintiff states that no expert testimony is required in this case because the jury may be instructed as to several actions that are defined by Colorado statute as unfair or deceptive acts in the insurance industry, including failing to acknowledge and act reasonably promptly upon communications with respect to claims, failing to implement reasonable standards for promptly investigating claims, and refusing to pay claims without conducting a reasonable investigation.  Docket No. 77 at 29 (citing Colo. Rev. Stat. § 10-3-1104(1)(h)).  Plaintiff also states, broadly, that "Allstate's file shows that it has cherry picked evidence."  *Id.*  To support her "cherry picking" argument, plaintiff cites generally to an exhibit that appears to consist of 27 pages of Ms. Humphrey's handwritten notes, taken when Ms. Humphrey reviewed plaintiff's medical records.  Docket No. 77 at 29; *see also* Docket No. 77-6.  Although plaintiff does not explain her "cherry picking" argument clearly, in her response to Allstate's SUMF 38, plaintiff states that Ms. Humphrey, in her notes, "circled references" to back pain in plaintiff's medical records that pre-dated the accident, while other medical records that pre-dated the accident contain no mention of severe low back pain.  Docket No. 77 at 15-16 (citing Docket No. 77-6 at 8 ("C/O LBP" circled and starred), 9.[8]

---

[8]Although plaintiff's argument in response to Allstate's SUMF is contrary to the Court's practice standards, which call for a "**brief** factual explanation" of the reason for denying a SUMF, Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.iv (emphasis in original), the Court will consider plaintiff's argument to

The Court finds that Allstate is not entitled to summary judgment due to plaintiff's failure to designate an expert to testify on industry standards.  First, as plaintiff argues, at trial, the jury may be instructed as to the unfair practices prohibited by Section 10-3-1104(1)(h).  Colo. Rev. Stat. § 10-3-1113(4).  At a minimum, Section 10-3-1104(1)(h) provides several examples of conduct violative of industry standards in the insurance industry.  Second, plaintiff's "cherry picking" argument, that Allstate unreasonably focused on evidence that supported its position that plaintiff's injuries pre-dated the accident and ignored other evidence that would contradict that position, is "within the common knowledge and experience of ordinary people." *Allen*, 102 P.3d at 344.  To the extent that plaintiff advances additional theories at trial for which Allstate believes Colorado law requires expert testimony, Allstate may raise an appropriate objection at trial.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants Allstate Fire and Casualty Insurance Company and Allstate Insurance Company's Motion for Partial Summary Judgment [Docket No. 54] is **DENIED**.

---

determine whether plaintiff can present argument and evidence at trial that might support a finding that Allstate violated an industry standard that would be "within the common knowledge and experience of ordinary people." *Allen*, 102 P.3d at 344.

DATED March 21, 2016.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge